UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MICHELLE BERGER,                           )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )   CASE NO. 4:08-cv-0090-DFH-WGH
                                           )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
                    Defendant.             )


ENTRY ON JUDICIAL REVIEW


Plaintiff Michelle Berger seeks judicial review of a decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits under the Social Security Act.  Acting for the Commissioner, an Administrative Law Judge (ALJ) determined that Ms. Berger was not disabled under the Social Security Act because her impairments did not meet or equal a listed impairment and she could perform work available in the national economy.  The court affirms the Commissioner's decision.


*Factual Background*


Ms. Berger was born in 1964.  She worked consistently as a certified nursing assistant from 1981 until April 2006.  R. 104.  She applied for disability insurance benefits on May 16, 2006.  R. 86.  She complained of asthma, allergies, sinusitis, hypothyroidism, anxiety, depression, joint pain, headaches, and a

spastic colon.  R. 103.  Her claim for benefits was denied initially and upon reconsideration.  Administrative Law Judge George Jacobs denied Ms. Berger's claims on February 5, 2008.  R. 15.  The Appeals Council denied her request for review.  R. 1.

I.    *Medical Record*

Ms. Berger's treating physician was Dr. Dean Beckman.  The record contains documentation from her visits to Dr. Beckman going back to 2000.  Ms. Berger reported asthma, anxiety, and depression and was taking anti-depressant medication as far back as 2000.  R. 251, 253.  The court discusses the records beginning in November 2005, when Ms. Berger alleges she became disabled.  In November 2005, Dr. Beckman diagnosed Ms. Berger with sinusitis.  R. 245.  In December 2005, he diagnosed her with hypothyroidism.  *Id.*  In January 2006, he diagnosed her with irritable bowel syndrome.  *Id.*  In February 2006, he diagnosed her with neuropathy.  *Id.*  On July 21, 2006, he diagnosed her with chronic anxiety and depression, chronic allergic rhinitis, and symptoms of diffuse myalgias and joint pains from anxiety.  R. 246.  He wrote that he did not feel that Ms. Berger was able to work on that date.  *Id.*  On August 18, 2006 he wrote that her anxiety was becoming worse.  *Id.*  On September 26, 2006, Dr. Beckman diagnosed Ms. Berger with shoulder pain and probable neuropathy of both legs. *Id.*  On October 9, 2006, she reported increasing anxiety.  *Id.*  On October 25, 2006, Ms. Berger reported that her anxiety symptoms were better, and he

diagnosed her with depression.  *Id.*  On August 3, 2007, Dr. Beckman diagnosed her with chronic sinusitis and asthma.  R. 279.  On February 28, 2007, he diagnosed her with asthma and depression.  R. 234.  On August 18, 2006, Dr. Beckman wrote in a letter that Ms. Berger suffered from anxiety, irritable bowel syndrome, back pain, and asthma.  He wrote that her "symptoms are overwhelming her to the point that she cannot hold a job.  She has lots of emotional liability and with her mental illness on top of her physical illnesses [she is] disabled to the point that she cannot work a meaningful job."  R. 238.

On November 3, 2007, Dr. Beckman completed a form indicating his opinion of Ms. Berger's ability to work based on her physical impairments.  He wrote that she could lift and carry a maximum of ten pounds only occasionally.  R. 272.  He wrote that she could stand and walk for two hours and could sit for eight hours without interruption.  R. 273.  He wrote that she could stand and walk for a total of four hours in a work day and could sit for all of a work day.  *Id.*  He wrote that she could reach, handle, finger, and feel frequently and push and pull only occasionally during the work day.  R. 274.  He wrote that she could never climb ladders, occasionally balance, stoop, kneel, crouch, and crawl, and could frequently climb stairs.  R. 275.  Finally, he wrote that Ms. Berger was "unable to tolerate any environmental stress, physical or emotional."  R. 277.

Ms. Berger also was a patient of Dr. David Gray at the Southern Hills Counseling Center.  She began visiting him in January 2007.  On July 11, 2007,

Dr. Gray wrote that Ms. Berger "will not be able to return to work at anytime in the near future.  She has had valiant efforts to return to work, all of which have ended unsuccessfully."  R. 258.  On several dates in 2007 Dr. Gray diagnosed Ms. Berger with major depression.  R. 261, 262, 264, 265.  He gave Ms. Berger a GAF (global assessment functioning) of 60.  R. 264.

On October 30, 2005 Ms. Berger visited Memorial Hospital in Jasper because of sinus pain and throat pain.  R. 187.  On October 12, 2007 she was admitted under court order to Memorial Hospital after she indicated that she was having suicidal thoughts.  R. 270.

Ms. Berger was admitted to Deaconess Cross Pointe Center in Evansville on August 21, 2006 for depression and suicidal ideation.  She received a diagnosis of major depressive disorder and asthma, hypothyroidism, sinus problems, pain and spastic colon.  R. 220.  When she was admitted her GAF was 35.  When she was discharged on August 28, 2006, it was 60.  *Id.*

The Indiana Disability Determination Bureau ordered a mental status examination of Ms. Berger.  Dr. Chris Catt, Psy. D., performed the examination on June 13, 2006.  Dr. Catt reported that Ms. Berger had an "adjustment disorder with depressed and anxious mood (improved on medication)" and a GAF of 55.  R. 202.  Joelle Larsen reviewed Dr. Catt's report on June 19, 2006.  She wrote that Ms. Berger had a non-severe impairment and a "coexisting nonmental

impairment that requires referral to another medical specialty." R. 204. She concluded that Ms. Berger did not meet Listing 12.04 for affective disorders. R. 207. She reported that, for purposes of the B criteria of Listing 12.04, Ms. Berger had mild limitations in the following areas: restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. R. 214. She wrote that Ms. Berger experienced no extended episodes of decompensation. *Id.* She reported that there was no evidence to establish the C criteria for Listing 12.04. R. 215. On October 10, 2006, Dr. William Shipley, Ph.D., reviewed Ms. Berger's file and concurred that she did not have a mental impairment that met a listing. R. 232. On October 11, 2006, Dr. J.V. Corcoran reviewed Ms. Berger's record (and gave Dr. Beckman's records controlling weight) and concluded that she did not have a severe physical impairment that lasted twelve months. R. 233.

The Social Security Administration completed two "Disability Determination and Transmittal" forms in 2006. Each form listed a primary diagnosis of asthma and a secondary diagnosis of affective disorders. Each concluded that Ms. Berger was not disabled. R. 61, 62.

II.     *Claimant's Reports*

On June 4, 2006, Ms. Berger completed a form listing her daily activities. She wrote that she performed chores around the house, including cooking,

cleaning, and doing the laundry when her health permitted the activities.  R. 109.
She said she spent over two hours each day reading and over two hours each day
doing housework.  *Id.*  She also spent time socializing with her family members.
R. 110.  She filled out the same form on August 31, 2006.  Her responses were
similar, but she wrote that she spent less than two hours reading each day and
less than two hours caring for pets each day.  R. 151.  She said that she
sometimes did not feel good enough to perform chores.  *Id.*  She reported new
problems driving and getting along with her family members.  R. 152.  She also
reported a recent stay at a hospital because of her mental health.  *Id.*

On an Administration form filled out on August 15, 2006, Ms. Berger
complained that her anxiety, depression, back pain, and headaches were
becoming worse.  R. 127.  She reported that her conditions precluded her from
performing most daily activities.  *Id.*  She reported taking Advair for asthma,
Allegra and Flonase for allergies, Bentyl for digestive problems, Cymalta for
depression, Klonopin for anxiety, Neurontin for pain, and Synthroid for
hypothyroidism.  R. 130-32.  She completed the same form again on November 1,
2006.  She reported more anxiety and depression, as well as nausea, aching, and
back pain.  R. 169.  She reported that anxiety and depression often stopped her
from performing routine activities and from being around groups of people.  *Id.*
She also reported that she had stopped cooking full meals.  R. 172.

III.    *Testimony at the Hearing*

The ALJ held a hearing on December 5, 2007.  Ms. Berger and vocational expert Lisa Courtney testified.  Ms. Berger testified that she experienced anxiety during the ninety minute drive to the hearing.  R. 34.  She testified that she had gained thirty-five pounds in the last six months.  R. 35.  She testified that she had hypothyroidism, back pain, a spastic colon, irritable bowel syndrome, sinusitis, and asthma. R. 37.  She testified that depression was her biggest problem.  R. 52.  She testified that her back pain ranged from a three to a seven on a scale of zero to ten, with zero being no pain.  R. 38.  She testified that she could sit for ninety minutes and stand for an hour without increased back pain.  R. 39.  She testified that she did not regularly walk and stand more than three hours in an eight-hour span.  R. 50.

Ms. Berger testified that she had social anxiety that kept her from being comfortable in public.  R. 42.  She testified that the medication Klonopin sometimes helped her social anxiety.  *Id.*  She was attending counseling that helped her anxiety.  R. 43.  She no longer had adequate concentration to prepare meals regularly, though she could perform some household chores.  R. 44, 46-47. She spent much of her time during a normal day taking care of her mentally-ill son.  R. 45.  She testified that the noise of the television and the radio often bothered her.  R. 46.  She rarely slept through the night.  *Id.*  She took her dog on a fifteen to twenty minute walk two or three times each week.  R. 48.  She talked

to her family members frequently, but she had few friends outside of her family. R. 49.

Vocational expert Lisa Courtney testified next.  Ms. Courtney listened to Ms. Berger's testimony and reviewed the evidence in Ms. Berger's file.  R. 56.  The ALJ posed the following hypothetical question to Ms. Courtney:

> Please assume that a person can lift 10 pounds frequently, 20 pounds occasionally, sit for 6 hours in an 8-hour day, stand and walk for 6 hours in an 8-hour day, occasionally perform postural activities, but never climb ladders, ropes, or scaffolding.  That person must avoid hazards like machinery and heights, fumes, odors, dusts, gasses, poor ventilation, temperature extremes and noise.  That person can frequently push pull with the lower extremities, occasionally push pull with the upper extremities, can frequently reach, including overhead reaching, handle and perform fine finger manipulation with the upper extremities, both of them, simple repetitive tasks, no production rate pace work but rather goal-oriented work.  That person can have occasional contact with co-workers and supervisor, and no contact with the public.

R. 57.  Ms. Courtney testified that such a person could not perform any of Ms. Berger's past work.  The ALJ added Ms. Berger's age, education, and work history to the hypothetical question.  Ms. Courtney testified that such a person could perform jobs in the Evansville region.  She testified that there were 2,400 jobs as a light unskilled assembler, 2,200 jobs as an inspector, and 1,800 jobs for "hand occupations" such as packers, fillers, and steamers.  R. 58.

The ALJ modified the hypothetical question to permit the person to lift only ten pounds "frequently and occasionally" and to sit for six hours and stand or

walk for two hours in an eight-hour day.  R. 58.  Ms. Courtney testified that such a person could perform some jobs in the Evansville region.  *Id.*  She testified that there were 1,400 jobs as a final assembler, 1,200 jobs as a touch-up inspector, and 800 jobs in "hand occupations."  R. 58-59.  She testified that if a person could maintain concentration for less than seven hours in an eight-hour day, she could not work.  R. 59.

### *Framework for Determining Disability and the Standard of Review*

To be eligible for the disability insurance benefits she seeks, Ms. Berger must establish that she suffered from a disability within the meaning of the Social Security Act.  To prove disability under the Act, the claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Ms. Berger was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her in the immediate area, or whether she would be hired if she applied for work. 42 U.S.C. § 423(d)(2)(A).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether Ms. Berger was disabled under the Social Security Act, the ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 404.1520.  The steps are as follows:

(1)   Has the claimant engaged in substantial gainful activity?  If so, she was not disabled.

(2)   If not, did the claimant have an impairment or combination of impairments that were severe?  If not, she was not disabled.

(3)   If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)   If not, could the claimant do her past relevant work?  If so, she was not disabled.

(5)   If not, could the claimant perform other work given her residual functional capacity, age, education, and experience?  If so, then she was not disabled.  If not, she was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

At step one, the ALJ concluded that Ms. Berger had not engaged in substantial gainful activity since her alleged onset date, November 2, 2005. R. 17. At step two, he concluded she had several severe impairments: asthma, polyneuropathy in the shoulders, ankles, and neck, as well as depression and anxiety. At step three, he determined that the impairments did not meet or medically equal a listed impairment. The ALJ stated that Ms. Berger's limitations did not meet or equal Listing 3.03 for asthma or 11.14 for peripheral neuropathies. He discussed in more detail that her impairments did not meet or equal Listing 12.04 for affective disorders or 12.06 for anxiety disorders. He explained that the category B and C requirements for Listings 12.04 and 12.06 were not met. R. 18.

Before proceeding to steps four and five, the ALJ determined Ms. Berger's residual functional capacity. He determined that she could lift and/or carry up to 10 pounds occasionally, frequently push or pull with her lower extremities, occasionally push or pull with her upper extremities, occasionally climb ramps or stairs and balance, stoop, kneel, crouch and crawl, never climb ladders, and frequently reach overhead. R. 19. He determined that Ms. Berger would have to avoid hazardous situations and could perform only simple repetitive tasks with no set production rate. Finally, he determined that Ms. Berger could have occasional contact with co-workers and supervisors and no contact with the public. In making this determination, the ALJ discounted some of Ms. Berger's claims of limitations. He said: "The evidence . . . reveals that the claimant engages in a

wide range of daily activities, which are inconsistent with the degree of limitation alleged." R. 21. The ALJ discussed Dr. Beckman's opinion that Ms. Berger could not work, but he found it to be inconsistent with other evidence in the record. R. 22-23.

At step four, the ALJ determined that Ms. Berger was unable to perform her past relevant work. R. 25. At step five, the ALJ determined that Ms. Berger could perform other work. The ALJ relied on the vocational expert's testimony that Ms. Berger could work as an assembler or inspector or in "hand occupations." R. 26.

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). Because the Appeals Council denied further review of the ALJ's findings, the ALJ's findings are treated as the final decision of the Commissioner. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, the reviewing court must uphold it. 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by re-weighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). The ALJ's decision must be based upon consideration of all the relevant evidence, and the ALJ must articulate at some minimal level his analysis of the evidence so that the court can trace adequately the path of the ALJ's reasoning. *Diaz*, 55 F.3d at 307-08.

*Discussion*

I.    *Treating Doctors' Opinions of Disability*

Ms. Berger first argues that the ALJ committed reversible error when he did not give controlling weight to her two treating doctors' opinions that she could not work.   The ALJ noted the opinions, but he concluded that they were not controlling because Administration regulations reserve the ultimate disability determination to the ALJ.   The ALJ was correct on the law and did not err by discounting the doctors' opinions.

An ALJ is required to give controlling weight to the medical opinion of a treating source if the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not contradicted by other substantial medical evidence in the record.   SSR 96-2p; see *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record).   However, a conclusion that the claimant is or is not disabled is not a medical opinion entitled to deference because that determination is reserved to the Commissioner.   20 C.F.R. § 404.1527(e); see SSR 96-2p (noting that an opinion entitled to deference must be a medical opinion under 20 C.F.R. § 404.1527); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to

work.'  Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability.").

   On August 18, 2006, Dr. Beckman wrote that Ms. Berger's  "symptoms are overwhelming her to the point that she cannot hold a job.  She has lots of emotional liability and with her mental illness on top of her physical illnesses [she is] disabled to the point that she cannot work a meaningful job."  R. 238.  On July 11, 2007, Dr. Gray wrote that Ms. Berger "will not be able to return to work at anytime in the near future.  She has had valiant efforts to return to work, all of which have ended unsuccessfully."  R. 258.  The Commissioner does not dispute that Drs. Beckman and Gray were treating sources.

   After discussing Dr. Beckman's opinion, the ALJ wrote that the opinion was a determination of disability that was reserved to the Commissioner.  The ALJ was correct.  Dr. Gray's and Dr. Beckman's opinions were legal conclusions that Ms. Berger was disabled.  The ALJ did not need to follow them under SSR 96-2p, as long as he otherwise explained his reasoning sufficiently, based on substantial evidence, which he did in this case.

II.   *Listing 12.04*

   Ms. Berger's next argument is that the ALJ erred when he determined that her limitations did not meet or equal Listing 12.04 for affective disorders.  To meet

the requirements of Listing 12.04, a claimant must meet the A and B criteria of the Listing or meet the C criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The B criteria of Listing 12.04 require marked limitations in two functional areas.

The ALJ did not discuss the A criteria for Listing 12.04, but he determined that Ms. Berger did not satisfy the B criteria.  He determined that she had only a mild restriction in daily living because of evidence that she was able to perform housework and other chores.  He determined that she had moderate difficulties in social functioning.  Despite her testimony that she had difficulty functioning in crowded stores, evidence suggested that she was able to shop regularly.  The ALJ determined that she had moderate difficulties in maintaining concentration, persistence, or pace.  The ALJ pointed out that several doctors assigned Ms. Berger a GAF score between 55 and 60, which is in the range of moderate symptoms.  He also wrote that she was able to maintain concentration to read, keep appointments, and manage money.  He found evidence of only two instances of decompensation.  R. 18.

Ms. Berger argues that the ALJ erred when he failed to discuss the A criteria.  The Commissioner did not respond to this argument, but the omission does not require reversal.  Ms. Berger had to show that she satisfied both the A and B criteria.  Once the ALJ determined that she did not meet the B criteria, there was no need to discuss the A criteria.

Ms. Berger also argues that the ALJ's conclusion that she did not satisfy the B criteria was an error because he ignored evidence in the record.  To satisfy the B criteria for Listing 12.04, a claimant must show that she suffers from two of the following:

1.      Marked restriction of activities of daily living; or

2.      Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence, or pace; or

4.      Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

Ms. Berger argues that the ALJ ignored and misconstrued evidence suggesting that she had a marked limitation in daily living.  She is correct.  At step three, the ALJ ignored many pieces of evidence suggesting that Ms. Berger had trouble with daily activities such as preparing meals, doing laundry, and doing yard work.  The ALJ also misconstrued evidence from Ms. Berger's husband suggesting that she had difficulty performing daily tasks.

The Commissioner does not respond to this argument.  Although the ALJ erred in his discussion of Ms. Berger's restrictions in daily living, he did not commit reversible error.  Listing 12.04 requires a showing that the claimant satisfied two of the B criteria.  The ALJ found that Ms. Berger satisfied none of the

criteria, so even if the ALJ had found a marked restriction in daily living, he could not have found that Ms. Berger met Listing 12.04.

Finally, Ms. Berger argues that the ALJ ignored a conclusion by Dr. Chris Catt that she met Listing 12.04. Dr. Catt did not make this conclusion. First, the form Ms. Berger cites was not filled out by Dr. Catt; it was filled out by Joelle Larsen. R. 204. Second, while the form includes a checked box next to "12.04 Affective Disorders," the checkmark indicates only that Ms. Larsen considered Listing 12.04 in concluding that Ms. Berger had a non-severe impairment. *Id.* She did not conclude that Ms. Berger met the listing requirements.

III.    *The ALJ's Credibility Finding*

Ms. Berger's third argument is that the ALJ's credibility finding was a reversible error because it was not adequately explained and not supported by the evidence. The ALJ determined that some of Ms. Berger's statements about her symptoms were not credible, so he discounted her complaints of limitations. The ALJ did not err when he made this determination.

The ALJ is required to consider statements of the claimant's symptoms and how they affect her daily life and ability to work.  20 C.F.R. § 404.1529(a). However, neither the ALJ nor a court is "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states

that she feels unable to work." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996), quoting *Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993).  Instead, there is a two-part test for determining whether a claimant's complaints contribute to a finding of disability.  First, the claimant must provide objective medical evidence of an impairment or combination of impairments that could be expected to produce the symptoms she alleges.  Second, the ALJ must consider the intensity and persistence of the alleged symptoms.  20 C.F.R. § 404.1529(a)-(c).  The ALJ must consider the claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other evidence of the following factors:

(1)   The claimant's daily activities;

(2)   Location, duration, frequency, and intensity of pain or other symptoms;

(3)   Precipitating and aggravating factors;

(4)   Type, dosage, effectiveness, and side effects of any medication;

(5)   Treatment, other than medication, for relief of pain or other symptoms;

(6)   Other measures taken to relieve pain or other symptoms;

(7)   Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Having considered these factors, the ALJ may make a reasoned credibility determination based upon the evidence about whether the claimant acts, day in

and day out, like a person would act who is really suffering from the symptoms the claimant alleges.  It is not necessary for the ALJ to recite findings on each factor, but the ALJ must give reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed.  See SSR 96-7p; *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination).  The court will not set aside an ALJ's credibility determination if there is some support in the record unless it is "patently wrong."  *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994).

The ALJ made the following finding about Ms. Berger's credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  The evidence as outlined in the body of the decision reveals that the claimant engages in a wide range of daily activities, which are inconsistent with the degree of limitation alleged.

R. 21.

Ms. Berger argues that this statement was unclear because it credited her to some extent but concluded that "her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." There is nothing inconsistent or unclear about the ALJ's credibility finding.  The

ALJ followed the required two-step process and determined that Ms. Berger's impairments caused her symptoms though the symptoms were not as severe as she alleged. The summary was short, but the entire opinion shows that the ALJ adequately considered the relevant factors.

Ms. Berger argues that the evidence supported the conclusion that she was disabled. She may be correct that there was evidence in the record that could have permitted the ALJ to conclude that she was disabled. However, the ALJ discussed evidence that led him to conclude that her symptoms were not as severe as she claimed. For example, he noted that she occasionally did housework and performed yard work, R. 22, that she shopped and visited with family members, R. 23, and that medication sometimes helped her anxiety and depression, R. 24. An ALJ's credibility determination is not error just because some evidence supports the claimant's account.

Finally, Ms. Berger argues that the ALJ did not "provide even a cursory review of the medications" she was taking. Pl. Br. 21. The ALJ is supposed to consider a claimant's medications when considering the severity of her complaints. The ALJ discussed Ms. Berger's medications at several points in the record. *E.g.*, R. 21-24. Ms. Berger lists several types of medication that the ALJ did not discuss, but she cites only a portion of the record that contains a list of her medications with no explanations about them. R. 254-56. She does not say how the ALJ's discussion of these medications could have changed the outcome.

She also criticizes the ALJ for not discussing her testimony that some of her medications caused side effects, but the ALJ did mention her testimony about these side effects.  R. 20.  The ALJ explained why he discounted some of Ms. Berger's subjective complaints, and it is safe to assume that the credibility opinion applied to her complaints of side effects.[1]

IV.    *Ms. Berger's Residual Functional Capacity*

Ms. Berger's final argument is that the ALJ erred when he determined that she had the residual functional capacity to perform limited types of sedentary work.  She claims that the ALJ should have limited her residual functional capacity to preclude her from jobs that require her to maintain concentration, persistence, and pace for more than seven hours in an eight-hour day.  The vocational expert testified that an individual with that limitation and the other limitations credited by the ALJ would not be able to work.  R. 59.  She also claims that Social Security Ruling 96-9p compels a finding of disability because she cannot perform a full range of sedentary work.

---

[1]Ms. Berger cites *Gentle v. Barnhart*, 430 F.3d 865 (7th Cir. 2005), in support of her credibility argument, but *Gentle* did not discuss an ALJ's credibility determination.  *Gentle* reversed a denial of benefits because the ALJ assumed that a claimant who could work in the home could work outside the home.  *Gentle* does not point to a remand in this case.  In *Gentle*, the ALJ ignored evidence that the claimant needed help to perform housework and performed such work with difficulty.   430 F.3d at 867.  In this case, the ALJ discussed Ms. Berger's testimony that she rarely performed housework, that it was painful when she did perform it, and that her husband often performed chores.  R. 20-21.

Ms. Berger does not cite evidence that establishes that the ALJ should have restricted her ability to work for more than seven hours during an eight-hour work day. Dr. Beckman stated that she "has pain all the time," R. 235, Ms. Berger reported that she sometimes became fatigued during tasks, R. 109, and her mother stated that she tired easily, R. 156. These items and other evidence cited by Ms. Berger do not compel the conclusion that she could not work a full day. The ALJ did not discuss the statements, but Ms. Berger has not shown how such a discussion would have changed his conclusion. In addition, the ALJ discounted Ms. Berger's complaints about her symptoms, and she was the source of much of the evidence about fatigue and pain. The ALJ's hypothetical question to the vocational expert incorporated all of the limitations that he credited, and the expert concluded that the hypothetical person could work. The ALJ was required to do no more. See *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) ("The ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible.").

Ms. Berger's fallback argument is that even if the ALJ correctly determined that she could work a full day, other limitations adopted by the ALJ (such as a restriction to goal-oriented work and an aversion to noise) compel a finding of disabled because of Social Security Ruling 96-9p. Ms. Berger argues that SSR 96-9p requires a finding of disability when an individual's occupational base is eroded below the sedentary level, but her interpretation of the ruling is incorrect. SSR 96-9p reads: "the ability to do even a *limited* range of sedentary work does not in

itself establish disability in all individuals, although a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." A determination that the claimant can perform a less than full range of sedentary work does not compel a finding that the claimant is disabled. The ALJ did not err in his residual functional capacity determination or his step-five determination that Ms. Berger could still perform some types of work.

### Conclusion

The court affirms the Commissioner's denial of Ms. Berger's application for disability insurance benefits. Final judgment shall be entered accordingly.

So ordered.

Date: August 21, 2009

_David F. Hamilton_
_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Diamond Z. Hirschauer
THE LAW OFFICES OF DIAMOND Z. HIRSCHAUER, P.C.
dzhirschauer@dzhlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov